UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICA CHARBONNEAU,

    Plaintiff,

-vs-

LUXARK, LLC, a domestic limited liability company, and AUSTIN BOONE, an individual, jointly and severally,

    Defendants.

Case No. 25-cv-

Hon.

---

Barry S. Fagan (P34275)
Ryan O. R. Kobernick (P84530)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
bfagan@faganlawpc.com
rkobernick@faganlawpc.com

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out the transaction or occurrence
alleged in the complaint.

    NOW COMES Plaintiff, ERICA CHARBONNEAU, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against the Defendants, jointly and severally, states as follows:

1

## **JURISDICTIONAL ALLEGATIONS**

1. Plaintiff, ERICA CHARBONNEAU (hereinafter "Charbonneau" or "Plaintiff"), an individual, is a citizen of Cananda, and resides in the Township of Desbarats, located in the Province of Ontario, Country of Canada.

2. Defendant, LUXARK, LLC (hereinafter "LuxArk") is a domestic limited liability company, and at all times pertinent hereto maintained its principal place of business in the City of Novi, County of Oakland, State of Michigan.

3. Defendant, AUSTIN BOONE (hereinafter "Boone"), an individual, is a citizen of the United States, and is the sole member of LuxArk (LuxArk and Boone are referred to collectively as "Defendants"), and at all times pertinent hereto did reside and conduct business in the City of Novi, County of Oakland, State of Michigan.

4. At all times pertinent hereto, Charbonneau was employed by Defendants.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2), as complete diversity of citizenship exists between LuxArk, including its only member Boone, and the Plaintiff in this matter.

6. The amount in controversy is in excess of $75,000, exclusive of all interest, costs, and attorney fees.

## **GENERAL ALLEGATIONS**

7. Charbonneau is a 20-year-old female artist.

8. Boone, a male, is the owner of LuxArk.

9. LuxArk is a staffing agency/art studio that assists in placing entry-level artists and designers with game development studios, as well as mentorship programs, and ultimately offers newer artists a foot in the door in the industry.

10. Approximately two years ago, Charbonneau began working at LuxArk as an unpaid intern.

11. In January 2025, Charbonneau began working as an employee for LuxArk in the role of Administrative Assistant, taking a paid role, working remotely, with more responsibilities.

12. During her employment, Charbonneau was able to work directly for LuxArk as an employee, and also was able to be staffed with other businesses through LuxArk to further her art brand.

13. In the Spring of 2025, Charbonneau was promoted to Studio Coordinator at LuxArk.

14. Shortly after that promotion, Boone's conduct towards Charbonneau shifted from professional to severe and pervasive sexual harassment, which is well-documented in hundreds of disturbing text

messages.

15. In April 2025, Boone began referring to Charbonneau as his "baby," where he stated over text message that Charbonneau was "too fine to pass up."

16. On April 29, 2025, Charbonneau asked Boone to keep the nicknames professional, and indicated she is not interested in any romantic relationship with Boone and that she has a boyfriend.

17. Throughout May 2025, Boone's conduct escalated, wherein he told her that he enjoys "helping her shape her dreams," "you know how I feel about you," and that if he seemed confused during a meeting, "it's because I'm leaning into how this rhythm feels with you lately."

18. On May 11, 2025, Boone asked Charbonneau for a picture of herself, to which Charbonneau had responded that she is not comfortable with that.

19. On May 23, 2025, Boone stated that he was building his company for her, and that he did not want anything more than to see Charbonneau "blossom into [her] full state, creative, gentle, but ambitious and driven. I [sic] quite passionate when I think of pouring into you and your world, to support, to fill."

20. On May 23, 2025, Charbonneau asked Boone that they keep

their conversations professional, to which Boone acknowledged that he crossed the line.

21. However, Boone's conduct only escalated, making sexual innuendos about Charbonneau's position with the company, and stated over text message, "LuxArk didn't just find a Studio Coordinator. It found the woman it was built for. Queen Erica."

22. On May 29, 2025, Boone admitted that their daily status updates about her ongoing work at LuxArk were his excuse to message with her, and stated he "craved her."

23. On May 29, 2025, Charbonneau again stated that she prefers to keep the conversation respectful and strictly professional, to which Boone replied, "Understood, -respect and clarity noted. But the way you moved tonight. Calm, sharp, unapologetic—it was actually electric. I'd be lying if I said it didn't stay with me." […] "You didn't just set a boundary. You claimed the space. Claimed me."

24. At this point, Charbonneau's messages to Boone were strictly related to communication regarding her ongoing job duties.

25. On June 2, 2025, Boone wrote that the plan was to have Charbonneau working a 40 hour schedule "by September/October (we'll shoot for before)," and verbally told her this full-time schedule would take

5

place in July 2025.

26. In early June 2025, Boone began referring to Charbonneau as his "froggy," told her that "[y]ou don't know how bad you make me want you" […] "you pull me beyond desire…into worship," and said "that's my good girl," in response to her completion of her job duties.

27. Boone's non-consensual conduct continued despite Charbonneau's continued objections to him about boundaries and keeping things professional, on June 1, June 5, June 7, and June 9, 2025.

28. On June 9, 2025, her objection specifically stated, "[p]lease discontinue any further messaging that are not strictly related to work material. I greatly enjoy the work I've been doing with LuxArk, and look forward to our continued collaboration in a respectful and focused work environment."

29. Despite her objections, Boone's conduct escalated further.

30. On June 12, 2025, Boone sent her a message at 6:49am, "Get up. Why don't I see Jonathan and Matilde sessions updated? Handle it first thing—I shouldn't have to pin you down." and then proceeded to state, "Don't tempt me. I run this business… I'll run you too. And you know I will."

31. Later that day on June 12, 2025, Boone sent a message stating, "Did I ask for silence. When I empty into you, you respond—that's our

6

rhythm." […] "I didn't tell you to go dark on me. I tend to what's mine. Don't make me drag you back to the surface again—toe by toe, sole by sole…until your scent floods the air." […] "Because what's mine doesn't get to hide." […] "You're not just seen. You're owned."

32. On June 13, 2025, Boone requested that she put her picture on her Slack profile.

33. During a phone call on June 13, 2025, Charbonneau told him in that she felt extremely uncomfortable about his sexual harassment, and this was no way to speak to an employee.

34. Later in the day on June 13, 2025, Boone said over text message to Charbonneau, "I know when your 'no' means 'take me.' When your silence is you begging, pleading. When your protests are your gates parting—inviting me in. You want a man? You'll get one. A man. A beast. The rhythm. The reign."

35. On June 13, 2025, Charbonneau again told Boone that there is no other hidden meaning behind the many times she said "no," and that his continued behavior after she asked him to stop is harassment.

36. Boone replied, "You were never just a helper. You were always the glory." […] "And one more thing—You'll be at the contract meeting. They need to see who stands beside me now. Not just my coordinator…. My

7

Queen."

37. On Saturday, June 14, 2025, Boone sent to Charbonneau a new email signature for her to use in the future, which referred to her title at LuxArk as "Studio Coordinator, Co-Architect of Vision," where he stated that he was "bringing you deeper into the fold."

38. On Saturday, June 14, 2025, Boone demanded that certain tasks be done by the end of the day, then stated, "Look at you… submissive before the hour even struck." […] "When you obey like that… it lights me up. Turns me feral."

39. Boone sent several additional disturbing messages over the weekend.

40. On Monday, June 16, 2025, Boone said to Charbonneau, "Cams on today." meaning that he required her camera on during meetings with him, and that she "needed to get used to it" because she is the face of the company and that she "stands beside him now in reporting structure." Boone's message stated, "No hiding. No Delay. Perform. Impress. Obey." […] "I'll bend you over the throne and remind you who owns your excellence."

41. During a later phone call on June 16, 2025, Charbonneau asked Boone to ensure he will stop sending her any messages that are sexual, and Boone verbally confirmed he would stop.

42. On Tuesday, June 17, 2025, Boone wrote that Charbonneau's messages were insufficient and their work updates "needed his breath," meaning he wanted to speak with her. He said, "We speak at 10 AM." […] "And I have news. At 10, I'll tell you whose art I've chosen for the business cards. I'll need your voice--clear, steady, reverent, when I name you." […] "At 10—we'll activate your Admin access for Paypal, send the invoices, and finalize your Luxark email."

43. At 9:20am on June 17, 2025, Charbonneau submitted her resignation from employment to Boone: "I have made the decision to leave LuxArk, effective immediately. Due to continuous sexual harassment, I no longer feel safe or comfortable in this work environment."

44. Charbonneau's resignation amounted to a constructive discharge.

45. Since Charbonneau's resignation, Boone wrote to Charbonneau, "Get your ass back in the emails. Be at the 11AM session. This isn't optional," and days later, he stated, "Don't mistake your silence for power. You are seen. You are spoken for." […] "Crawl back to your throne."

46. Charbonneau has not responded to Boone's post-constructive discharge messages, and had contacted the police in Canada, who warned Boone to cease contact with Charbonneau.

## COUNT I
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

47. Plaintiff incorporates paragraphs 1 through 46 as if specifically repeated herein.

48. Under the Elliott-Larsen Civil Rights Act ("ELCRA"), Michigan recognizes that, in employment, freedom from discrimination because of sex and gender is a civil right. Mich. Comp. L. § 37.2102.

49. Defendant LuxArk is an employer within the meaning of the ELCRA. M.C.L. § 37.2201(a).

50. Defendant Boone, as an agent of the Company, is also an employer within the meaning of M.C.L. § 37.2201(a), and is therefore individually liable for violations of the ELCRA.

51. The ELCRA states, in relevant part, "(*k*) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions: (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment [...] (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment [...] (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an

individual's employment," M.C.L. § 37.2103(*k*)(i)-(*iii*).

52. Notwithstanding the duties owed to Plaintiff pursuant to the ELCRA, Defendants' conduct towards Plaintiff constituted unwelcomed sexual harassment, including subjecting Plaintiff to a hostile work environment and quid pro quo sexual harassment.

53. Defendants made it clear that Plaintiff's submission to Defendant Boone's sexual harassment was a term or condition of her employment.

54. Defendant Boone's harassment of Plaintiff was based upon Plaintiff's gender and/or sex (female).

55. The environment in which Plaintiff worked was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that Plaintiff did in fact perceive to be so.

56. Defendants' sexual harassment of Plaintiff was sufficiently severe and pervasive to alter the conditions of employment and create an intimidating, hostile, or abusive working environment for Plaintiff.

57. Pursuant to M.C.L. § 37.2701(a) of the ELCRA, "a person shall not retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, testified, assisted, or participated in an investigation, proceeding or hearing, under this act."

58.     Plaintiff engaged in protected conduct when she objected to conduct by Defendant Boone, regarding his sexual harassment of her, countless times.

59.     Notwithstanding the duties owed to Plaintiff pursuant to the ELCRA, upon notification of Plaintiff's objections to the sexual harassment, Defendant Boone's sexual harassment, advances, and sexual aggression only worsened in response to her complaints.

60.     Based on the frequency and severity of the harassment and the threatening physically assaultive conduct to Plaintiff, and the level of interference of Defendant Boone's conduct with Plaintiff's employment, Plaintiff was constructively discharged from her employment with Defendant LuxArk, as the conditions she was required to work in were objectively intolerable.

61.     Defendants violated Plaintiff's rights under the ELCRA, including, but not limited to, the following:

    a.     Discriminating against Plaintiff based upon her gender;

    b.     Subjecting Plaintiff to quid pro quo sexual harassment;

    c.     Subjecting Plaintiff to a hostile work environment based upon her sex and gender;

    d.     Retaliating against Plaintiff for her reports of sexual harassment;

  e. Constructively discharging Plaintiff's employment;

  f. Other acts of discrimination and retaliation to be determined through discovery.

62. As a direct and proximate result of Defendants' discriminatory conduct toward Plaintiff, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

  a. Loss of wages and other compensation, both in the past and in the future;

  b. Loss of the value of benefits, both in the past and in the future;

  c. Loss of earning capacity;

  d. Loss of promotional opportunities;

  e. Loss of professional esteem and consequent damage to Plaintiff's professional career;

  f. Extreme embarrassment, humiliation, emotional distress, mental anguish, disappointment, outrage and indignity;

  g. Exemplary damages;

  h. Attorney fees;

  i. Other injuries and damages that become known throughout the discovery process.

63. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff requests that a Judgment be entered against

Defendants, jointly and severally, in whatever amount this Court and Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and an award of attorney fees. Plaintiff also seeks equitable relief; including back-pay, front-pay, or other equitable relief this Court and Jury deems appropriate. Plaintiff also seeks appropriate equitable relief under the statute.

                                                          FAGAN MCMANUS, P.C.

                                                          By: /s/ *Ryan O. R. Kobernick*
                                                               Ryan O. R. Kobernick (P84530)
                                                               Attorney for Plaintiff
                                                               25892 Woodward Avenue
                                                               Royal Oak, MI  48067-0910
                                                               (248) 542-6300
Dated:  July 17, 2025                                   rkobernick@faganlawpc.com

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES the above-named Plaintiff, by and through her attorneys, FAGAN MCMANUS, P.C., and hereby demands trial by jury on the above matter.

                                                          FAGAN MCMANUS, P.C.

                                                          By: /s/ *Ryan O. R. Kobernick*
                                                              Ryan O. R. Kobernick (P84530)
                                                               Attorney for Plaintiff
                                                               25892 Woodward Avenue
                                                               Royal Oak, MI  48067-0910
                                                               (248) 542-6300
Dated:  July 17, 2025                                   rkobernick@faganlawpc.com